# UNITED STATES DISTRICT COURTS
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

MIGUEL GUTIERREZ,                        )
                                         )
    Plaintiff,                           )
                                         )
     v.                                )  Case No. 1:11-cv-0185-TWP-DML
                                         )
THE CITY OF INDIANAPOLIS,                )
MICHAEL R. KERMON, and                   )
JASON M. THALHEIMER,                     )
                                         )
    Defendant.                           )

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment. This dispute arises from allegations by Plaintiff, Miguel Gutierrez, ("Mr. Gutierrez") against Defendants, The City of Indianapolis ("the City"), Michael R. Kermon ("Officer Kermon"), and Jason M. Thalheimer ("Officer Thalheimer") (collectively, "Defendants"), alleging violations of his constitutional rights under 42 U.S.C. § 1983[1] and state law claims of false arrest and battery. Specifically, Mr. Gutierrez alleges Officer Kermon violated his Fourth Amendment rights under the Constitution by unreasonably seizing him, unlawfully arresting him, and using excessive force in the process of arresting him. Additionally, he argues that Officer Thalheimer's failure to intervene and prevent Officer Kermon from infringing on his constitutional rights is a violation of § 1983. Furthermore, Mr. Gutierrez alleges Defendants violated his equal protection rights under the Fourteenth Amendment. Lastly the Mr. Gutierrez asserts various tort claims and false

---

[1] Plaintiff also alleges in his complaint that Officer Kermon's actions "constituted an unreasonable and/or a malicious prosecution, in violation of the fourth and/or fourteenth amendments, actionable pursuant to 42 U.S.C. § 1983." *See* Dkt. 1 at 7. However, the Seventh Circuit does not recognize a cause of action under § 1983 for malicious prosecution when an adequate state law addresses the tort of malicious prosecution. *See Ray v. City of Chi.*, 629 F.3d 660, 664 (7th Cir. 2011). Because Indiana law recognizes the tort of malicious prosecution, Gutierrez cannot maintain a § 1983 claim for malicious prosecution. *See Newsom v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001). Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiff's malicious prosecution claim.

arrest claims against the City.  Defendants counter by arguing that they are entitled to qualified immunity from the federal claims, and the remaining state claims are barred by the Indiana Tort Claims Act or fail for lack of evidence.  For the reasons set forth below, Defendants' Motion for Summary Judgment (Dkt. 39) is **GRANTED** in part and **DENIED** in part.

## I.  BACKGROUND

Because this Entry addresses a motion for summary judgment, the following facts are either undisputed or reflect evidence in the light most reasonably favorable to the non-moving party, Gutierrez.  *See Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 728 (7th Cir. 2011).  On March 8, 2009, at approximately 9:40 p.m. Officer Kermon of the Indianapolis Metropolitan Police Department ("IMPD") received a dispatch directing him to go to 428 North Forest Avenue in Indianapolis, Indiana to investigate a report of two African American males chasing a third individual.  Officer Kermon then proceeded to that address in a fully-marked IMPD police car. Once Officer Kermon arrived at 428 North Forest Avenue, he approached the house going southbound along the road and observed Mr. Gutierrez near the entryway of 428 North Forest Avenue.  Mr. Gutierrez appeared to be walking northbound along the street.  As Officer Kermon drove his marked police car along North Forest Avenue, he proceeded slowly because he was not sure "what kind of danger there might have been[.]"

Mr. Gutierrez began walking northbound on North Forest Avenue at approximately 9:30 p.m. after performing maintenance work on his commercial truck.[2]  As he walked northbound on the west side of the street, he was carrying a golf club with him for protection because it was dark and "because this area was a very high crime area."  Mr. Gutierrez testified that he observed a vehicle parked along the west side of the street ahead of him with its headlights shining.

---

[2] Mr. Gutierrez holds a commercial driver's license and at the time of the alleged incident he was working as a contract, over-the-road truck driver for Precision Logistics.  *See* Dkt. 46-1 at 15:2-22.

Fearing for his own safety and in an attempt to avoid any problems stemming from the parked vehicle, Mr. Gutierrez decided to cross the street and walk along the east side walk.  While attempting to cross the street, Mr. Gutierrez observed the slow moving car coming toward him in the southbound lane.  Notably, Mr. Gutierrez did not know the vehicle was a police car driven by a police officer because it was dark, the car's headlights were turned off, and there was a row of parked cars obstructing his view.  Concerned about the slow moving vehicle, Mr. Gutierrez immediately ceased his attempt to cross North Forest Avenue and returned to the west side sidewalk.

After Mr. Gutierrez returned to the sidewalk, he heard someone shout behind him, "Hey, you, stop right there.  Hey, you, stop."[3]  Dkt. 46-1 at 75:19-22.  Mr. Gutierrez did not initially heed to these commands because he did not recognize the voice, nor did Officer Kermon identify himself as a police officer.  Officer Kermon testified that he approached Mr. Gutierrez under the premise that he may be the victim from his dispatch.[4]  According to Officer Kermon, Mr. Gutierrez's clothes were dirty, and he appeared "clearly agitated[,]" "a little animated[,]" "swaying[,]" and lacked "full control" of his leg.  When it appeared that Mr. Gutierrez was not complying with his commands, Officer Kermon ran in front of Mr. Gutierrez to stop him.  Officer Kermon then pointed his gun and shined a flashlight at Mr. Gutierrez.

Officer Kermon ordered Mr. Gutierrez to "get on the ground, raise your hands," and to "drop the stick."  Due to the flashlight shining in his face Mr. Gutierrez initially hesitated because he did not yet realize he was being confronted by a police officer.  However, at some

---

[3] Mr. Gutierrez claimed to have heard Officer Kermon (who he did not realize was a police officer at the time) shout this command two or three times in fast succession. Dkt. 46-1 at 75:20-21.

[4] Officer Kermon testified that he believed that Mr. Gutierrez was initially a victim because "there were like ongoing problems in the neighborhood between African-Americans and the Latinos, robberies, and things like that… it was immediately apparent to me that [Gutierrez] was a Latino." Dkt. 41-1 at 21:14-21.

moment during the encounter, Officer Kermon's flashlight lowered slightly giving Mr. Gutierrez a clearer view of the officer's badge and uniform and he began to follow Officer Kermon's orders.  According to the complaint, Mr. Gutierrez immediately threw the golf club backwards.[5] In the process of throwing the golf club, Mr. Gutierrez claimed that he said, "Hey, what's going on?  I live right there[,]" pointing to a house further north along the road from their position. Dkt. 46-1 at 77:16-17.  The complaint alleges that "[before] he could finish his sentence, [Officer Kermon] raised his hand close to Mr. Gutierrez's face, and sprayed him directly in the eyes with OC/CS spray.  After being blinded by the chemical spray, Mr. Gutierrez was immediately forced to the ground by Officer Kermon.  Once on the ground, Officer Kermon attempted to secure Mr. Gutierrez's arms so that he could handcuff him.  Officer Kermon testified that Mr. Gutierrez's left hand was between his stomach and the ground, and he believed Mr. Gutierrez was resisting his attempts to free his arm.  At this moment, Officer Thalheimer arrived and assisted Officer Kermon in extracting Mr. Gutierrez's arm from underneath his stomach.  Officer Thalheimer gave a knee strike to one of Mr. Gutierrez's legs while attempting to remove his left arm from underneath him.  Mr. Gutierrez was then handcuffed by one of the officers.  Immediately after he was handcuffed, Mr. Gutierrez felt a strong kick to his stomach which was immediately followed by another kick.[6]  The pain of the first kick caused Mr. Gutierrez to curl his body.

After being kicked, Mr. Gutierrez began to verbally protest the officers' treatment of him to other officers in the area.  During his protest, Mr. Gutierrez asked what right did the officers have to treat him like this and complained that he had been kicked by the officers. According to

---

[5] Mr. Gutierrez testified that he believes he threw the golf club approximately 25 to 30 feet behind him.  Officer Kermon does not indicate how far the golf club traveled away from Mr. Gutierrez, he only indicated that after Mr. Gutierrez "dropped" the stick, he couldn't determine if "[Gutierrez] wanted to reach down and pick the club back up…."  *See* Dkt. 41-1 at 46:16-17.

[6] Neither party disputes the fact that Mr. Gutierrez's eyes were closed during the period when he alleged he was kicked.

Mr. Gutierrez, Officer Kermon admitted to kicking him and when he asked Officer Kermon, "do you have a right to do what you did to me?", officer Kermon responded "Of course, I can do whatever I want to you, you filthy Mexican." According to Mr. Gutierrez, each time he raised his head off the ground in an attempt to see what was going on, Officer Thalheimer would put his boot on his head "stomping" it very hard "back to the ground".

Eventually, Mr. Gutierrez was arrested and brought to the Marion County Arrestee Processing Center. Officer Kermon filed an incident report and affidavit for probable cause for charges of public intoxication and resisting law enforcement. Mr. Gutierrez was released from custody the following day and went to Wishard Memorial Hospital because of pain on his side and eye problems associated with the chemical spray. The medical report from Wishard Hospital indicated that Mr. Gutierrez had scatter abrasions but no apparent fractures. Subsequently, in August 2009, Mr. Gutierrez visited a doctor at the Alivio Medical Center because the pain in his side had not subsided. During his visits to the medical center, an x-ray was taken revealing that Mr. Gutierrez had a non-displaced fracture of the 11th rib.

On September 4, 2009, Mr. Gutierrez submitted a notice of tort claim to the City of Indianapolis indicating that he was "verbally and physically abuse[d]. The criminal charges against Mr. Gutierrez were dismissed by the Marion County Prosecutor on October 23, 2009, after a magistrate ruled that the initial stop was illegal. Additional facts are added below as needed.

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476

F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim."  *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.  DISCUSSION

Mr. Gutierrez alleges the Defendants violated his Fourth Amendment rights by unreasonably seizing him, unlawfully arresting him, and using excessive force in the process of arresting him.  In addition, he contends the Defendants' actions violated the Equal Protection Clause of the Fourteenth Amendment.  Furthermore, Mr. Gutierrez alleges that Officer Thalheimer's failure to intervene and prevent Officer Kermon from infringing on his constitutional rights constituted a violation of § 1983.  Lastly, Mr. Gutierrez alleges Defendants violated various state law claims under Indiana law.  Countering Mr. Gutierrez's claims, Defendants assert they are entitled to qualified immunity with respect to the Mr. Gutierrez's federal claims and argue that Mr. Gutierrez's remaining state law claims lack support or are barred under the Indiana Tort Claims Act ("ITCA").  The Court will address each issue in turn.

6

A.      **Federal False Arrest Claims**

Mr. Gutierrez asserts Fourth Amendment claims against the Defendants pursuant to 42 U.S.C. § 1983.  Section 1983 creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States."  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  Because § 1983 is not itself a source of substantive rights, but a means for vindicating federal rights elsewhere conferred, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *see also Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997).  The Fourth Amendment issues presented in this case relate to Mr. Gutierrez's investigatory stop while on North Forest Avenue, his arrest, and the force used during his arrest. Specifically, Mr. Gutierrez alleges that Defendants violated his constitutional rights when (1) Officer Kermon lacked reasonable suspicion to conduct a lawful *Terry* stop; (2) Officer Kermon lacked probable cause to arrest him for public intoxication and resisting arrest; and (3) Officer Kermon used excessive force in effectuating his arrest.  Defendants contend that their actions were lawful, and, at any rate, they contend they are shielded from liability under qualified immunity.

1.      **Mr. Gutierrez's Unreasonable Seizure Claim**

Defendants contend that the initial stop of Mr. Gutierrez was lawful because it was supported by reasonable suspicion in an effort to investigate whether a crime had been or was being committed.  The Fourth Amendment provides: "The right of the people to be secure in their persons…against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.   "Whether a person has been seized is determined by considering whether a reasonable person, innocent of any crime, would have concluded that he was not free to leave

7

police custody." *A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004) (citing *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)); *see also United States v. Boden*, 854 F.2d 983, 991 (7th Cir. 1988) (noting that an individual is "seized" within the meaning of the Fourth Amendment when his freedom of movement is restrained, either by means of physical force or authority).  As such, an encounter between a law enforcement officer and an individual which culminates into an investigatory detention is commonly referred to as a *Terry* stop.  *See Terry v. Ohio*, 392 U.S., 1, 27, S.Ct. 1868, 20 L.Ed.2d 889 (1968).  More specifically, "[a] *Terry* investigative stop is a brief detention which gives officers a chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity."  *Boden*, 854 F.2d at 992 (citing *Terry*, 392 U.S. 1 (1968)).

To justify this type of intrusion upon an individual, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.  *Id.*  (quotations and citations omitted); *see also United States v. Scheets*, 188 F.3d 829, 837 (7th Cir. 1999) (noting that an officer may engage in a non-intrusive detention of a person when the officer has specific and articulable facts sufficient to give rise to a reasonable suspicion the person has committed or is committing a crime).  In determining whether a *Terry* stop is supported by reasonable suspicion, courts consider the "'totality of the circumstances' as they were presented to the officer at the time of the encounter."  *Scheets*, 188 F.3d at 837 (citing *United States v. McCarthur*, 6 F.3d 1270, 1277 (7th Cir. 1993)); *cf. United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010) ("A reasonable suspicion requires more than a hunch but less than probable cause  and considerably less than preponderance of the evidence.").

Officer Kermon testified that he initially observed Mr. Gutierrez, a Hispanic male, walking north along North Forest Avenue from 428 North Forest Avenue—the location identified in his dispatch.  He further testified that Mr. Gutierrez was carrying a golf club.  Upon further observation, Officer Kermon noticed that Mr. Gutierrez appeared to have disheveled clothing, disheveled hair, and swayed from side-to-side as he walked.  Additionally, Officer Kermon testified that Mr. Gutierrez failed to stop as commanded as he approached him from his rear.  As such, Defendants contend that given the proximity of Mr. Gutierrez to an area of high crime, his failure to respond to Officer Kermon's commands to stop, and his disheveled appearance, Officer Kermon had sufficient reasonable suspicion to believe that a crime had been or was being committed.

Mr. Gutierrez contends that he has presented sufficient evidence that raises genuine issues of material fact as to whether the officer had reasonable suspicion based on the "totality of the circumstances."  *See Scheets*, 188 F.3d at 837.  Specifically, Mr. Gutierrez claims that he was unable to immediately identify Officer Kermon's car as a police car because it was nighttime, and he was temporarily blinded by the car's headlights when they were turned on.  Additionally, it is undisputed by both parties that Officer Kermon never identified himself as a police officer when he approached Mr. Gutierrez from behind and ordered him to stop.  According to Mr. Gutierrez, because he did not know the identity of the officer at the time, he did not stop because "[he] thought [he] was going to be robbed…."  *See* Dkt. 46-1 at 8-9.  Finally, Mr. Gutierrez testified that after Officer Kermon finally reached him and impeded his movement, Officer Kermon immediately shined a flashlight in his eyes.  Not only did the shining flashlight make it difficult for Mr. Gutierrez to visually identify Officer Kermon as a law enforcement officer, Mr.

Gutierrez claims he did not initially recognize the officer's police uniform which was a different color.

Because Officer Kermon did not identify himself to Mr. Gutierrez, Mr. Gutierrez argues that summary judgment should be denied on this issue.   While it is undisputed that Officer Kermon never verbally identified himself as a police officer before he confronted Mr. Gutierrez, this omission alone does not make his *Terry* stop unreasonable.  *See Catlin v. City of Wheaton*, 574 F.3d 361, 369 (7th Cir. 2009) ("[I]t is far from clearly established that the Fourth Amendment requires police officers to identify themselves  in the course of carrying out an arrest in a public place.").  "When determining whether a police officer has reasonable suspicion to conduct an investigatory stop, we 'look to the officer['s] knowledge at the time of the [detention], not the suspect's.'"  *Jewett v. Anders*, 521 F.3d 818, 827 n.6 (7th Cir. 2008) (quoting *Marshall ex rel. Gossens v. Teske*, 284 F.3d 765, 773 (7th Cir. 2002)).

Here, Officer Kermon believed that Mr. Gutierrez could visibly identify his marked police car and saw his uniform.  Moreover, Officer Kermon observed Mr. Gutierrez looking directly at him, but he continued to walk away from him.  Officer Kermon further testified that he saw the golf club Mr. Gutierrez was carrying and observed that Mr. Gutierrez appeared to look "clearly agitated."  Dkt. 41-1 at 28:14-15.  Combined with Mr. Gutierrez's overall disheveled appearance and agitated behavior, Officer Kermon noted that he failed to comply with his multiple commands to stop as he approached him on the street.  When viewing the totality of the circumstances known to the officer, Mr. Gutierrez's perceived agitated behavior, possession of a golf club, and refusal to obey the officer's commands after looking at him, establish reasonable suspicion.  *See United States v. Lenoir*, 318 F.3d 725 (7th Cir. 2003) (noting that a person's flight upon seeing a police officer approach him or her in a high crime area can

10

establish reasonable suspicion); *United States v. Quinn*, 83 F.3d 917 (7th Cir. 1996) (noting that a person's failure "to yield to the officer's initial commands to halt" in a high crime area support reasonable suspicion).   This conclusion is further bolstered by the fact that Officer Kermon observed Mr. Gutierrez in the entryway of the address that was identified in his dispatch call that initially brought him to the area.   Accordingly, Defendants' motion for summary judgment on this issue is granted.

### 2.    Mr. Gutierrez's Unlawful Arrest Claim

Mr. Gutierrez argues that Officer Kermon did not have probable cause to arrest him for public intoxication and resisting law enforcement, and as such, he violated his Fourth Amendment rights.   "Probable cause for an arrest exists, if, at the moment the arrest was made, the fact and circumstances within the officer's knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed."   *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989); *see also Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994).   In addition, the question of whether there is probable cause for an arrest is determined at time of the arrest.   *See Maltby v. Winston*, 36 F.3d 548, 557 (7th Cir. 1994).   Under Indiana law, "[i]t is a class B misdemeanor for a person to be in a public place or a place of  public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance (as defined in IC 35-48-1-9)." Ind. Code   7.1-5-1-3.[7]

In this case, at the moment of the arrest, Officer Kermon observed that Mr. Gutierrez had bloodshot eyes and had an issue with balancing himself as he walked, giving the appearance that he swayed.   Defendants contend that these observations combined with Mr. Gutierrez's

---

[7] In Mr. Gutierrez's response brief, he contends that the applicable statute defining "intoxication" for purposes of this case is Indiana Code § 9-13-2-86. Dkt. 45 at 19.  However, the Court finds that this particular definition of intoxication is not applicable in this case because Title IX of the Indiana Code is directed to the operation of a vehicle, while public intoxication is criminalized under Title VII of the Indiana Code.

disheveled appearance and disheveled hair would lead a reasonable officer to believe at that moment that Mr. Gutierrez was publicly intoxicated. *See Hampton v. State*, 468 N.E.2d 1077, 1078 (Ind. Ct. App. 1984) (recognizing that police officers had probable cause to arrest defendant for public intoxication when he had bloodshot eyes, unsteadiness on his feet, and smelled of alcohol). However, the Court must construe the facts and all reasonable inferences drawn from them in the light most favorable to the non-moving party, Mr. Gutierrez. In the record, neither officer testified that he smelled alcohol on Mr. Gutierrez. Mr. Gutierrez also denies that he was swaying or shifting his weight in front of Officer Kermon. Dkt. 46-3 at 2. Additionally, it appears Mr. Gutierrez could not properly communicate to Officer Kermon the reasons for his disheveled appearance or his bloodshot eyes because he was immediately sprayed with OC/CS spray. Based on these facts the Court cannot find as a matter of law that the officers had probable cause to arrest Mr. Gutierrez for committing the misdemeanor of public intoxication.

Mr. Gutierrez also challenges his arrest for resisting law enforcement on grounds that Officer Kermon lacked probable cause. At the time of his arrest, Indiana Code 35-44-3-3 was in effect and articulated the offense of resisting law enforcement: A person commits the crime of resisting law enforcement when he knowingly or intentionally 1) resists a law enforcement officer engaged in his lawful duties; 2) resists with the authorized service of a civil or criminal process or order of a court; or 3) flees from law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop. Ind. Code. § 35-44.1-3-1 (formerly codified as IC § 35-44-3-3). Defendants argue that because Officer Kermon was under the belief that he was unable to properly handcuff Mr. Gutierrez's left arm, his belief sufficiently establishes probable cause. To support their claim, Defendants emphasize Officer

Kermon's testimony that he had to call Officer Thalheimer for help in extracting Mr. Gutierrez's left arm from underneath him.  Both officers deny placing any weight on Mr. Gutierrez's back during the exchange.  However, viewing the facts in the light most favorable to Mr. Gutierrez, he disputes that he was resisting against either Officer Kermon or Officer Thalheimer.  He claims that his left arm was pinned between his stomach and the ground.  Dkt. 46-1 at 89:1-4. Furthermore, Mr. Gutierrez testified that he could not move his left arm out to the officer because one of them had his weight on his back restricting his movement from side to side.  *Id.* at 89:19-22. Contributing to his difficulties to quickly respond to the officers' requests, Mr. Gutierrez states that he felt "burning" from the chemical spray in his eyes and "[t]he pain was terrible." *Id.*  at  89:10-12.  As such, a genuine issue of material fact exists with respect to this issue.

### i.      Qualified Immunity

Defendants contend that they are shielded from liability with respect to Mr. Gutierrez's unlawful arrest claims under the doctrine of qualified immunity.  "Under the doctrine of qualified immunity, police officers are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Importantly, when qualified immunity applies, a defendant is not merely entitled to a defense from liability; he is entitled not to stand trial. *See Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   In determining whether qualified immunity will apply to shield police officers from suit, a court undertakes a two-step inquiry (1) "whether the Mr. Gutierrez's allegations make out a deprivation of a constitutional right," and (2) "whether the right [at issue] was clearly established

at the time of the defendant's alleged misconduct." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).[8]

The Court finds that Mr. Gutierrez's testimony regarding both officers' involvement in his arrest raise disputed questions of fact regarding the existence of probable cause which precludes a finding for qualified immunity with respect to Officer Kermon. *See Arnott v. Mataya*, 995 F.2d 121, 123-24 (8th Cir. 1993) (citations omitted) ("As a general rule, the question of qualified immunity is ordinarily one of law for the court....  This does not mean, however, that courts may always decide questions of qualified immunity on summary judgment. If the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would not be justified in making an arrest, then a material dispute of fact exists.  Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law.").  As such, the Court finds that Officer Kermon is not entitled to summary judgment on this issue under the doctrine of qualified immunity.  Accordingly, Defendants' motion for summary judgment is denied with respect to this issue.

### 3.    Mr. Gutierrez's Excessive Force Claim

Next, Mr. Gutierrez alleges that he suffered injuries as a result of the actions taken by the individual Defendants in the process of arresting him.  Accordingly, he claims Officer Kermon's use of excessive force violated his constitutional rights under the Fourth Amendment.  "While not every unnecessary use of force during a seizure violates the Fourth Amendment, it is clearly

---

[8] Recently in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court left it to the lower federal courts to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.

established that the excessive use of force during an investigatory stop constitutes a Fourth Amendment violation." *See Brown v. City of Milwaukee*, 288 F. Supp. 2d 962, 977 (E.D. Wis. 2003) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see also Titran v. Ackman*, 893 F.2d 145, 146 (7th Cir. 1990) (stating that an individual's right under the Fourth Amendment "to be free of excessive force during an arrest has long been established"). Furthermore, "[w]hen a law enforcement officer is alleged to have used excessive force in the course of an arrest, the issue is whether the officer's actions were 'objectively reasonable' in light of the situation the officer faced." *Graham*, 490 U.S. at 397. The use of force is considered to be excessive if it is not "objectively reasonable" in light of the facts and circumstances confronting the officers, without regard to their underlying intent or motivation. *Brown*, 288 F. Supp. 2d at 963. In considering whether an officer's actions were objectively reasonable, courts consider certain factors including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade the arrest by flight. *Morfin v. City of East Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003). "Balancing these factors is often a question for a jury, though in some cases the issue can be decided as a matter of law." *Phelps v. City of Indianapolis*, 2004 WL 1146489, * at 9 (S.D. Ind. May 10, 2004).

Defendants argue that Officer Kermon used reasonable force against Mr. Gutierrez in an effort to subdue him. Specifically, Defendants assert that their use of the OC/CS spray on Mr. Gutierrez was reasonable given the uncertainty of the situation which included his intoxicated appearance combined with his failure to comply with Officer Kermon's orders to drop the golf club quickly necessitated the use of the OC/CS spray to secure Mr. Gutierrez. In addition, Officer Thalheimer admitted that he initiated a knee strike to Mr. Gutierrez's upper thigh before

handcuffing him in an effort to make him comply with the officers' orders.  *See* Dkt. 41-6 at 22:6-17.  Mr. Gutierrez, however, denies that he was physically resisting the officers and claims that he was compliant with Officer Kermon's order to drop his golf club by throwing it several feet behind him.  Mr. Gutierrez then testified that Officer Kermon immediately sprayed his eyes with OC/CS spray while he was in a non-threatening position and was attempting to comply with his orders.   Afterwards, Mr. Gutierrez asserted that Officer Kermon kicked him in the stomach causing him to curl up his body and then kicked him again in the stomach before he was handcuffed.  Defendants argue that his testimony is speculative because he had his eyes closed and could not see which officer kicked him.  Dkt. 40 at 27.

However, in viewing the facts in the light most favorable to Mr. Gutierrez, the evidence suggests that the use of the OC/CS spray may have contributed to the reason why Mr. Gutierrez could not see exactly who allegedly kicked him.  Further, he testified that he felt the impact of the two kicks and sustained injuries because of them, which is corroborated by a medical report from Alivio Medical Center diagnosing him with a fractured rib.  Dkt. 46-8 at 2.  In light of the facts and circumstances facing the officers at the time of his arrest, Mr. Gutierrez did not pose a threat to any of the officers and was not evading arrest by flight because he was already handcuffed.  As such, a reasonable jury could conclude that any use of force on Mr. Gutierrez at that moment would be excessive.  *See Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004) ("We acknowledge that even minor uses of force are unconstitutionally excessive if they are 'totally gratuitous.'") (citation omitted).  Thus, the testimony of Mr. Gutierrez along with evidence from the medical report raises a genuine issue regarding the reasonableness of the officers' actions.  *See Phelps*, 2004 WL 1146489, *at 10-11 (denying summary judgment after concluding plaintiff's testimony stating that officers sprayed OC/CS in his eyes and hit and

kicked him after being handcuffed raised genuine issues of fact with respect to his excessive force claim).

### i.   Qualified Immunity

Defendants assert that Officer Kermon is entitled to qualified immunity with respect to Mr. Gutierrez's excessive force claim.   As discussed previously, in determining whether qualified immunity will apply to shield police officers from suit, a court undertakes a two-step inquiry (1) "whether the plaintiff's allegations make out a deprivation of a constitutional right," and (2) "whether the right [at issue] was clearly established at the time of the defendant's alleged misconduct."  *McAllister*, 615 F.3d at 881.  With respect to the first element, Mr. Gutierrez has presented sufficient evidence to allow a reasonable jury to determine that the force exerted by the officer was objectively unreasonable, thereby depriving Mr. Gutierrez of his Fourth Amendment right to be free from unreasonable seizure.

Turning to the second element, the Court must determine whether the right at issue was clearly established.  As the Supreme Court has set forth, a right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  In this case, the Court finds that Officer Kermon's conduct violated clearly established law.  Taking the facts in the light most reasonably favorable to the Mr. Gutierrez, an officer would have known that spraying OC/CS spray into a person's eyes and kicking him twice in the stomach after he was handcuffed would be a violation of his Fourth Amendment right to be free from excessive force. *See Sallenger v. Oakes*, 473 F.3d 731, 741-42 (7th Cir. 2007) (rejecting police officer's qualified immunity claim after concluding that a reasonable officer would have known that administering close-fist punches and flashlight blows to the head of a

handcuffed arrestee after he stopped resisting would violate the individual's Fourth Amendment right); *see also Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (holding that a showing that force was "so plainly excessive" is sufficient to meet the clearly established requirement). The Court finds that Officer Kermon is not entitled to qualified immunity. Accordingly, Defendants' motion for summary judgment is denied with respect to this issue.

### 4.    Failure to Intervene Claim

Mr. Gutierrez alleges in his complaint that Officer Thalheimer is liable under § 1983 for failing to intervene and prevent his constitutional rights from being infringed upon by another police officer. Specifically, under *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994), "[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: 1) that excessive force was being used, 2) that a citizen has been unjustifiably arrested, or 3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Id.* at 285 (emphasis in original). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Vill. of East Hazel Crest*, 100 F.3d 467, 478 (7th Cir. 1997) (citation omitted).

Mr. Gutierrez argues that a reasonable jury could conclude that Officer Thalheimer failed to intervene while Officer Kermon used excessive force against him. The Court disagrees. A reasonable jury could not possibly conclude that Officer Thalheimer had an opportunity to stop the force allegedly applied by Officer Kermon when it occurred in rapid succession. The excessive force in this case that took place included the use of the OC/CS spray and the two

kicks administered by Officer Kermon, according to Mr. Gutierrez. Officer Thalheimer was only in a position to potentially intervene with respect to the two kicks. Mr. Gutierrez testified that the two kicks occurred "[r]ight then, immediately" after handcuffing and within seconds of each other. Dkt. 41-5 at 92:8-12. Moreover, when the two kicks occurred Officer Thalheimer had just completed restraining Mr. Gutierrez. Because the excessive force used against Mr. Gutierrez occurred within a few seconds and while Officer Thalheimer was occupied with completing the handcuffing, a reasonable jury could not conclude that Officer Thalheimer had a chance to intervene. *See Thomas v. City of Fort Wayne*, 2008 WL 282348, at *8 (N.D. Ind. Jan. 31, 2008) (finding that a reasonable jury could not possibly conclude that the bystander officers had chance to stop the force used in pulling plaintiff out of car and striking him in the head and legs when it took only seconds for the event to occur and the officers were occupied restraining the plaintiff). Accordingly, the Court grants Defendants' motion for summary judgment with respect to Mr. Gutierrez's failure to intervene claim.

### 5.    Equal Protection Claim

Mr. Gutierrez also alleges that Officer Kermon intentionally discriminated against him in violation of the Equal Protection Clause of the Fourteenth Amendment. Specifically, Mr. Gutierrez alleges that "Officer Kermon kicked him after he was handcuffed because the officer believed him to be a 'filthy Mexican.'" Dkt. 45 at 27. As evidence indicating racial bias, Mr. Gutierrez alleges that Officer Kermon said "I can do whatever I want to you, you filthy Mexican," in response to his questioning of the officer's conduct as to why he kicked him. Defendants counter by arguing that the Mr. Gutierrez's evidence is insufficient to support his equal protection claim, and in the alternative, the individual officers assert they are entitled to qualified immunity.

To state an equal protection claim, a §1983 plaintiff must allege that a state actor intentionally discriminated against him due to his membership in a protected group. *Sherwin Manor Nursing Ctr., Inc. v. McAulifee*, 37 F.3d 1216, 1221 (7th Cir. 1994). Additionally, in establishing discriminatory effect, the plaintiff must allege that similarly situated individuals were otherwise treated differently. *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *Merritt v. Hawk*, 153 F. Supp.2d 1216, 1225 (D. Colo. 2001). The Seventh Circuit, as well as other circuit courts, has consistently articulated that the isolated use of racially derogatory language, while deplorable, does not rise to the level of a constitutional violation. *See e.g.*, *Brims v. Barlow*, 441 Fed. Appx. 674, 678 (11th Cir. 2011); *Dewalt v. Carter*, 224 F.3d 607, 612 n.3 (7th Cir. 2000); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) (holding that "an officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation). However, a pattern of harassment involving the use of racial slurs along with some other conduct that deprives an individual of established rights may violate equal protection. *See Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (denying summary judgment on plaintiff's equal protection claim when defendants directed numerous racial epithets at an inmate during alleged assaults); *Dewalt*, 224 F.3d at 612 n.3 (suggesting that the use of racially derogatory language is "strong evidence of racial animus, an essential element of any equal protection claim).

In this case, Mr. Gutierrez has alleged that Officer Kermon used racially derogatory language during an arrest in which the officer used excessive force. Moreover, the manner in which Officer Kermon made the racially derogatory comment toward Gutierrez's strongly suggests that Gutierrez would have been treated differently if he had not been Hispanic. *See Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986) ("[W]hen the racially derogatory language

is coupled with conduct infringing the prisoner's right to security of his person, an inference arises that the conduct was motivated by racial bias."). Accordingly, Gutierrez has set forth sufficient evidence to indicate that his constitutional rights were violated under the Fourteenth Amendment. The use of such language combined with the officer's conduct may amount to an equal protection violation. *See Dewalt*, 224 F.3d at 612 n.3.

As previously discussed, Defendants argue that Officer Kermon is entitled to qualified immunity. Accordingly, Mr. Gutierrez must demonstrate that the law was so "clearly established" that a reasonable officer would understand that what he is doing violates that right. *Anderson*, 483 U.S. at 640. To make this demonstration, Mr. Gutierrez "must point to either an analogous case, dealing with the same constitutional right and similar facts, or demonstrate that the violation was so obvious that a reasonable person would recognize that their actions were a violation." See *Sparing v. Vill. of Olympia Fields*, 77 F. Supp. 2d 891, 899 (N.D. Ill. 1999). Here, the summary judgment evidence establishes that when Mr. Gutierrez questioned what he perceived as physical abuse and asked the officer "do you have a right to do this to me?", Officer Kermon explained his actions on racial grounds; that he had a right to be physically abusive, not because he perceived Mr. Gutierrez as resisting arrest, but because Mr. Gutierrez was a "filthy Mexican" and "I can do whatever I want to you". A reasonable person would recognize that these actions were a violation and a reasonable jury could conclude that the officer's kicking of Mr. Gutierrez after he was handcuffed was due to his race. As such, Officer Kermon is not entitled to qualified immunity on this issue and summary judgment is denied.

### 6.     State Law Claims

Lastly, Mr. Gutierrez asserts that the City is liable for the state law claim of false arrest and battery. Defendants argue that Mr. Gutierrez has not preserved his state law claim for false

arrest against the City because he has failed to comply with the notice requirement of the ITCA. The ITCA governs tort claims against governmental entities and public employees.  Furthermore, "the ITCA places limitations on Indiana's liability by barring a potential plaintiff's suit unless he or she complies with the notice requirements." *Brown v. Alexander*, 876 N.E.2d 376, 380 (Ind. Ct. App. 2007).  Pursuant to the ITCA, a notice must:

> describe in short and plain statements the facts on which the claim is based.  The statement must include the circumstances which brought about the loss, the extent of loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

Ind. Code § 34-13-3-10.  A claimant's failure to provide proper notice required by the ITCA entitles a defendant to dismissal.  *See Ind. Dep't of Corr. v. Hulen*, 582 N.E.2d 380, 380-81 (Ind. 1991).  Compliance with the ITCA is a procedural precedent which the plaintiff must prove and the trial court must determine prior to trial.  *Madden v. Erie Ins. Grp.*, 634 N.E.2d 791, 793 (Ind. Ct. App. 1994).  Mr. Gutierrez argues that his false arrest claim is not subject to dismissal because it substantially complies with the notice requirement of the ITCA.  *See Collier v. Prater*, 544 N.E.2d 497, 500 (Ind. 1989) (noting that the crucial consideration regarding substantial compliance is "whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense").  The Court disagrees.

In this case, Mr. Gutierrez's notice of tort claim did not serve the purposes of the notice requirement as it relates to his false arrest claim; therefore, it was not in substantial compliance with it.  Specifically, the notice of tort claim identified Mr. Gutierrez as the claimant, notified the City that an officer had verbally and physically abused him, stated an intent to seek damages, listed the injuries he received, and named the place and date of the event where his injuries

occurred.  The notice did not mention a claim of "false arrest" or provide the City with any indication that Mr. Gutierrez would be raising a claim of false arrest under Indiana law.  *See Howard Cnty. Bd. of Comm'rs v. Lukowiak*, 810 N.E.2d 379, 383-84 (Ind. Ct. App. 2004) (finding the trial court erred in denying summary judgment with respect to plaintiffs' claims for lost wages and loss of consortium when the governmental entity was not presented with such claims in the notice).  Because the notice did not contain information regarding Mr. Gutierrez's false arrest claim, the City was not given enough information to ascertain the full nature of the claims against it.  Thus, the state law claim for false arrest cannot survive.  Accordingly, summary judgment is granted in favor of the Defendants in regards to the state law claim for false arrest.

The Courts finds that Mr. Gutierrez's battery claim is preserved.  Furthermore, the Court concludes that the same basic reasoning discussed above regarding Mr. Gutierrez's excessive force claim applies with equal force to the battery claim filed against the City since "Indiana's excessive force standard effectively parallels the Fourth Amendment standard…."  *Bowden v. Town of Speedway*, 539 F. Supp. 2d 1092, 1100 (S.D. Ind. 2008).  Because of the same factual disputes that bar summary judgment on the excessive force claim, summary judgment must also be denied on the battery claim.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Dkt. 39) is **GRANTED** in part and **DENIED** in part.  Specifically, the Court **DENIES** Defendants' motion for summary judgment with respect to Mr. Gutierrez's Fourth Amendment claims for unlawful arrest, excessive force, equal protection and Mr. Gutierrez's state law claim for battery, but **GRANTS** Defendants' motion with respect to Mr. Gutierrez's unreasonable seizure claim,

malicious prosecution claim, and Mr. Gutierrez's state law claim for false arrest.  Additionally,

individual defendant Jason M. Thalheimer is dismissed from this suit.

        SO ORDERED.   08/13/2012


                                        Hon. Tanya Walton Pratt, Judge
                                        United States District Court
                                        Southern District of Indiana



DISTRIBUTION:

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

John C. Ruckelshaus
RUCKELSHAUS  KAUTZMAN BLACKWELL BEMIS & HASBROOK
jcr@rucklaw.com

Travis E. Shields
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
travis.shields@indy.gov

Richard A. Waples
WAPLES & HANGER
rwaples@wapleshanger.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org